## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| JEFFREY ALLEN THOMAS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 1:15CV19 |
| | ) | |
| FRANK L. PERRY, Secretary, | ) | |
| N.C. Department of Public Safety, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Petitioner, a prisoner of the state of North Carolina, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Docket Entry 1.) Respondent has filed an Answer (Docket Entry 7), a Motion for Summary Judgment (Docket Entry 8), and a Brief in support of the same (Docket Entry 9). Petitioner has filed a document entitled, "Reply to State's Answer for Petitioner to Writ of Habeas Corpus." (Docket Entry 10.) Also before the Court is Petitioner's motion to appoint counsel. (Docket Entry 11.) This matter is now prepared for a ruling.

## PROCEDURAL HISTORY

On January 11, 2012, in Rowan Country Superior Court, Petitioner was convicted of trafficking in opiate or heroin by possession, trafficking in opiate or heroin by transportation, and felonious possession with intent to sell or deliver a controlled substance. (Docket Entry 9, Ex. 2 at 28-29.) Petitioner was sentenced to 70-84 months imprisonment. (Docket

1

Entry 9, Ex.2 at 32-34).   The North Carolina Court of Appeals found no error in Petitioner's convictions on May 7, 2013.   *See State v. Thomas*, 227 N.C. App. 170, 175, 742 S.E.2d 307, 310 (2013).   The North Carolina Supreme Court denied Petitioner's petition for discretionary review on August 27, 2013.   *State v. Thomas*, 367 N.C. 223, 747 S.E.2d 555 (2013).   On August 25, 2014, Petitioner filed a motion for appropriate relief ("MAR") in Rowan Country Superior Court ("MAR State Court") (Docket Entry 9, Ex. 8.)   Petitioner's motion was denied on November 3, 2014.   (Docket Entry 1 at 17.)   On December 4, 2014, Petitioner filed a pro se petition for writ of certiorari in the North Carolina Court of Appeals.   (Docket Entry 9, Ex. 13.)   On December 11, 2014 certiorari was denied.   (Docket Entry 1 at 18.)   Petitioner then filed the instant federal habeas petition on January 8, 2015.   (Docket Entry 1.)

## Petitioner's Claims

Petitioner raises four claims: (1) that he was subject to ineffective assistance of counsel; (2) his Six Amendment right to confront his accusers was violated; (3) his Sixth and Fourteenth Amendment rights to Due Process were violated; and (4) he was convicted on unreliable lab test results thereby rendering the "evidence . . . inadmissible" and that his claim should not "be procedurally barred."   (Docket Entry 1, § 12, Grounds 1-4.)

## Factual Background

The North Carolina Court of Appeal summarized the facts from Petitioner's case as follows:

> The evidence presented tended to show that defendant was a retail store manager who began taking prescription pain pills provided to him by one of the

2

store employees, Stephanie Griggs. Defendant testified that over a nine month period Griggs provided him with 100 pills. On the morning of 4 August 2010, Griggs called defendant, stating that she had access to pain medication containing hydrocodone and asking if he was interested in making a purchase. Defendant requested between ten and twenty pills. The two agreed to meet in the parking lot of a local grocery store. Prior to the exchange, Griggs met with officers in the Rowan County Sheriff's Department. An officer provided Griggs with fourteen pills containing hydrocodone, an opiate derivative and schedule III controlled substance. Griggs then met with defendant and exchanged the fourteen pills for eighty dollars. Defendant was arrested upon exiting the grocery store parking lot.

*Thomas*, 227 N.C. App. at 171, 742 S.E.2d at 308.

## Standard of Review

Where a state trial court adjudicated a petitioner's claims on their merits, this court must apply 28 U.S.C. § 2254(d)'s highly deferential standard of review to such claims. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). That statute precludes habeas relief in cases where a state court has considered a claim on its merits unless the decision was contrary to or involved an unreasonable application of clearly established federal law as set out by the United States Supreme Court or the state court decision was based on an unreasonable determination of the facts. *Id.* at 181-82. A state court decision is "contrary to" Supreme Court precedent if either arrives at "a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite" to that of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 405 (2000) (quotation omitted). A state decision "involves an unreasonable application" of Supreme Court law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state

3

prisoner's case." *Id.* at 407. "Unreasonable" does not mean just "incorrect" or "erroneous" and the Court must judge the reasonableness of the state court's decision from an objective, not subjective, standpoint. *Id.* at 409-12. State court factual findings are presumptively correct unless clearly and convincingly rebutted. 28 U.S.C. § 2254(e)(1). As demonstrated below, Petitioner's claims fail regardless of the standard of review—de novo or a more deferential standard—applied.

<u>Discussion</u>

*Ground One*

First, Petitioner contends that he received ineffective assistance of counsel because his attorney failed to argue entrapment as directed by Petitioner. (Docket Entry 1, § 12, Ground One.) To prove ineffective assistance of counsel generally a petitioner must establish: (1) that his attorney's performance fell below a reasonable standard for defense attorneys, and (2) that he was prejudiced by this performance. *See Strickland v. Washington*, 466 U.S. 668, 687-94 (1984). With respect to the first prong, the petitioner bears the burden of affirmatively showing that his counsel's performance was deficient, that is, that the performance fell below an objective standard of reasonableness under prevailing professional norms. *Id.* at 687-89; *Spencer v. Murray*, 18 F.3d 229, 233 (4th Cir. 1994). With respect to the second prong, Petitioner must show that prejudice resulted from the deficient performance, as initial matter, that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 692-694. A reasonable probability is one "sufficient to undermine confidence in the outcome." *Spencer*, 18 F.3d at

4

233 (citing *Strickland*, 466 U.S. at 694).

Petitioner's ineffective assistance of counsel claim does not satisfy the first prong of the test. Petitioner has failed to establish that his "counsel's representation fell below an objective standard of reasonableness." *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (citing *Strickland* 466 U.S. at 688). There is a "strong presumption that counsel's representation was within the wide range of reasonable professional assistance." *Id.* (citation and quotation omitted). The North Carolina Court of Appeals noted that, "[b]y his own admission defendant had acquired pills for pain from [Ms.] Griggs over a nine month period." *Thomas*, 227 N.C. App. at 174, 742 S.E.2d at 310. Subsequently, Petitioner and Griggs agreed that Petitioner would purchase at least 10 to 20 pills from Ms. Griggs. *Id.* With Ms. Griggs' help, law enforcement conducted a controlled buy. *Id.* Moreover, the record showed that Petitioner purchased pills many times before law enforcement become involved. *Id.*

The entrapment defense consists of a two part test:

> (1) acts of persuasion, trickery or fraud carried out by law enforcement officers or their agents to induce a defendant to commit a crime, [and] (2) when the criminal design originated in the minds of the government officials, rather than with the innocent defendant, such that the crime is the product of the creative activity of the law enforcement authorities.

*State v. Reid*, 224 N.C. App. 181, 193, 735 S.E.2d 389, 398 (2012) (citations and quotations omitted). "On this record, [Petitioner] has failed to produce credible evidence that he was induced by persuasion, trickery or fraud to commit a crime he otherwise had no intention of committing." *Thomas*, 227 N.C. App. at 174, 742 S.E.2d at 310. Therefore, the Petitioner's counsel decision to ignore Petitioner's request to argue entrapment did not fall below an

5

objective standard of reasonableness. Because Petition cannot establish the first prong of the test, his effective assistance of counsel claim with respect to this argument fails. Furthermore, because Petitioner cannot establish a valid entrapment claim, the proceeding would not have been different if counsel raised the entrapment argument. Thus, Petitioner does not satisfy the second prong of the *Strickland* test with respect to this assertion.

Next, Petitioner contends that he was subject to ineffective assistance of counsel because his counsel failed to impeach Ms. Griggs after she perjured herself at trial. (Docket Entry 1, § 12, Ground One; Docket Entry 3 at 15.) Petitioner argues that Ms. Griggs falsely testified that Petitioner extorted her for pain killers and that law enforcement was after Petitioner. (*Id.* at 9.) Here, counsel's failure to impeach Ms. Griggs did not run afoul of ineffective assistance of counsel. Although Petitioner's counsel did not attempt to impeach Ms. Griggs in respect to inconsistent statements, he did attempt to establish a relationship between Petitioner and Ms. Griggs to reveal whether she had a substance abuse problem, and to reveal whether helping the Sheriff Department caused her to have medical problems.[1] (Docket Entry 9, Ex. 15 at 41-44.) "Pursuant to *Strickland,* it was not unreasonable for [this Court] to find that counsel's strategy was within 'the wide range of professionally competent assistance.'" *Koon v. Rushton*, 364 F. App'x 22, 29 (4th Cir. 2010) (citing *Strickland*, 466 U.S. at 694).

Even if the Court found that Petitioner's attorney's failure to impeach Ms. Griggs fell

---

[1] In Ms. Griggs' police statement, she indicated that Petitioner and Ms. Griggs were just friends but they kissed twice. (Docket Entry 9, Ex. 10 at 3.) Ms. Griggs also stated she and Petitioner were both addicted to pills. (*Id.* at 4.)

below an objective standard of reasonableness, the undersigned is confident that the result of the case would be the same. Impeaching Ms. Griggs would not prevent the jury from learning that Petitioner acquired pills from Griggs over a period of nine months because Petitioner testified to this himself. *Thomas*, 227 N.C. App. at 171, 742 S.E.2d at 308; (Docket Entry 9, Ex. 15 at 73.) Moreover, impeaching Ms. Griggs would not have prevented the jury from learning that Petitioner met with Ms. Griggs in her car to purchase pills on the day of the controlled buy and that the pills were subsequently found in his car. *Hoots v. Allsbrook*, 785 F.2d 1214, 1221 (4th Cir. 1986) (concluding that the attorney's failure to impeach the State's only identification witness may have called into question the attorney's attempt to develop a basis for defense of this client but it did not undermined the Court's confidence in the result of the case); (Docket Entry 9, Ex. 14 at 56-59; Docket Entry 9, Ex. 15 at 79-80). Thus, Petitioner's claim does not satisfy the *Strickland* test.

Moreover, Petitioner raised this argument in his MAR. (Docket Entry 9, Ex. 9 at 16.) For Petitioner to obtain "habeas corpus from a federal court, [he] must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103. The MAR State Court did not err, much less act contrary to or unreasonably apply clearly established federal law in denying this claim. Thus, Petitioner's claim fails.

Next, Petitioner contends that he received ineffective assistance of counsel because his counsel conceded his guilt to trafficking by possession before the jury. (Docket Entry 1, §

7

12, Ground One; Docket Entry 3 at 15.)

> In order to substantially comply with the Section 2254 Rule 2(c), a petitioner must state *specific, particularized facts* which entitle him or her to habeas corpus relief for each ground specified. These facts must consist of *sufficient detail* to enable the court to determine, from the face of the petition alone, whether the petition merits further habeas corpus review."

*Gomez v. Lewis*, No. 1:12CV387, 2014 WL 6908132, at *11 (M.D.N.C. Dec. 8, 2014) (citing *Bullard v. Chavis,* No. 96–7614, 153 F.3d 719 (table), 1998 WL 480727, at *2 (4th Cir. 1998)) (unpublished) (emphasis in original and quotations omitted). Although, at the close of the State's evidence, Petitioner's counsel moved only to dismiss the charge of trafficking by transportation, the argument concerning this motion occurred outside the presence of the jury and did not impact the jury's verdict. (Docket Entry 9, Ex. 16 at 68-69.) Petitioner provides one conclusory sentence to support his claim stating that counsel "chose to concede my guilt to trafficking by possession and only test the state's case of trafficking by transportation." (Docket Entry 3 at 15). Because the claim does not consist of sufficient detail to enable the Court to determine if the petition merits habeas review, "[p]etitioner clearly has not established a basis for relief under Section 2254(d)." *Cearley v. Perry*, No. 1:09CV397, 2014 WL 2607153, at *22 (M.D.N.C. June 11, 2014) *report and recommendation adopted*, No. 1:09CV397, 2014 WL 4809233 (M.D.N.C. Sept. 26, 2014) *appeal dismissed*, 599 F. App'x 59 (4th Cir. 2015) (holding that the petitioner's claim that his counsel's failure to argue that the trial court erred in sustaining a prosecutor's objection did not establish a basis for relief under 2254 because the petitioner "offer[ed] nothing [to support his] . . . bald assertion").

Moreover, "[i]n order to obtain an evidentiary hearing on an ineffective assistance

claim-or, for that matter, on any claim-a habeas petitioner must come forward with some evidence that the claim might have merit. Unsupported, conclusory allegations do not entitle a habeas petitioner to an evidentiary hearing." *Nickerson v. Lee*, 971 F.2d 1125, 1136 (1992). As reasoned above, Petitioner provides one sentence concerning his counsel's alleged decision to concede that Petitioner was guilty of trafficking by possession in his brief. (Docket Entry 3 at 15). He does not point to any place in the record that supports this contention. Thus, his claim is insufficient to establish ineffective assistance of counsel.

Next, Petitioner contends that he anticipated speaking at the arraignment and counsel would not allow him to do so. (Docket Entry 1, § 12, Ground One; Docket Entry 3 at 14.) Petitioner also argues that his due process rights were violated because his counsel waived his arraignment. (*Id.* at 14.)

> The term 'arraignment' has a well-defined signification. Strictly speaking, the defendant is arraigned by being called to the bar of the court to answer the accusation contained in the indictment, the arraignment consisting of three parts: (1) Calling the defendant by name and commanding him to hold up his hand, that his identification may be certain; (2) reading to him the indictment, and (3) taking his plea."

*Johnson v. United States*, 38 App. D.C. 347, 349 (D.C. Cir.) *aff'd*, 225 U.S. 405 (1912) (citations omitted). "The object of an arraignment is the identification of the accused and the framing of an issue upon which he may be tried." *Id.* The purpose of the arraignment is not for Petitioner to establish why he is innocent. Thus, Petitioner's counsel did not act unreasonably by preventing Petitioner from speaking at his arraignment.

Moreover, in light of the substantial evidence against Petitioner, he was not unduly prejudiced by not speaking at the arraignment. Petitioner does not provide any facts to

9

support this argument. Further, the Petitioner does not explain how this act unduly prejudiced him. Petitioner merely states that his due process rights were violated by his counsel's waiver of his arraignment. (Docket Entry 3 at 14.) Unsupported, conclusory allegations do not entitle a habeas petitioner to an evidentiary hearing. *Nickerson*, 971 F.2d at 1136. Moreover, the undersigned is not convinced that Petitioner's inability to speak at his arraignment is "sufficient to undermine confidence in the outcome." *Spencer*, 18 F.3d at 233 (citing *Strickland*, 466 U.S. at 694). Therefore, Petitioners' argument does not satisfy the *Strickland* test.

Next, Petitioner contends counsel failed to communicate with respect to pretrial matters. (Docket Entry 1, § 12, Ground One.) Specifically, Petitioner alleges that he discovered on his own that he was charged and indicted for trafficking by transportation and had to call counsel for clarification. (Docket Entry 3 at 13.) Petitioner also alleges that it took his counsel 34 days to honor Petitioner's discovery request. (*Id.* at 14.) Petitioner further contends that counsel did not provide Petitioner with an audio recording used against him at trial and that he only met with counsel for one hour in 16 months. (*Id.*) "[J]udicial scrutiny of counsel's performance must be highly deferential." *United States v. Blue*, 343 F. App'x 910, 911 (4th Cir. 2009) (quotations and citations omitted). Petitioner "has failed to make any allegation or offer any support for the contention that but for counsel's unprofessional conduct, the result of his proceeding would have been different." *Thompson v. United States*, No. 5:07-CR-35-1BO, 2013 WL 140037, at *2 (E.D.N.C. Jan. 10, 2013). Even if counsel's conduct was objectively unreasonable, it is insufficient to establish undue prejudice

10

because it cannot be determined that based on Petitioner's allegations "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* at *1 (citing *Strickland,* 466 U.S. 694); *Fountain v. United States*, No. 1:09-CR-00013-MR-9, 2014 WL 221059, at *9 (W.D.N.C. Jan. 21, 2014) (finding that counsel's failure to communicate with Petitioner to discuss issues concerning her appeal did not constitute ineffective assistance of counsel because evidence the petitioner wanted to bring to her counsel's attention would not have exonerated her).

Next, Petitioner argues that his trial counsel failed to admit "crucial evidence" and that because counsel failed "to make obvious challenges to the State's case," there was "no adversarial testing" of the evidence. (Docket Entry 1, § 12, Ground One; Docket Entry 3 at 13.) According to *Strickland,*

> a fair trial is one in which evidence subject to adversarial testing is presented to an impartial tribunal for resolution of issues defined in advance of the proceeding. The right to counsel plays a crucial role in the adversarial system embodied in the Sixth Amendment, since access to counsel's skill and knowledge is necessary to accord defendants the 'ample opportunity to meet the case of the prosecution' to which they are entitled.

*Strickland,* 466 U.S. at 685 (citation omitted). Petitioner contends that his counsel refused to introduce Mr. Griggs' police statement in which "she admitted to being addicted to opiates, to buying them off the street, and to providing [Petitioner] with pills on a number of occasions." (Docket Entry 3 at 2, 15.) In accordance with *Strickland,* the prejudice prong can be evaluated first if lack of sufficient prejudice alone can dispose of the ineffective assistance claim. *Strickland,* 466 U.S. 670; *Thompson,* 2013 WL 140037, at *1. Given the fact that Petitioner acquired pills from Ms. Griggs over a period of nine months—and on the day

of the controlled buy— impeaching Ms. Griggs with respect to the matters mentioned in her police statement would not yield a different outcome in the case. *Hoots*, 785 F.2d at 1221 (holding that the attorney's failure to impeach the State's main witness did not undermine the Court's confidence in the result of the case); *Thomas*, 227 N.C. App. at 171, 742 S.E.2d at 308; (Docket Entry 9, Ex. 15 at 73.) Thus, Petitioner's claim that his counsel failed to introduce Ms. Griggs' police statement does not satisfy the *Strickland* test.

Petitioner also contends that his counsel failed to introduce into evidence a letter from Detective Lombard which "closed the door on all the arguments and challenges to the State's case." (*Id.* at 15.) Petitioner asserts that Detective Lombard's letter would establish an error in the chain of custody of the pills used for the controlled buy. (Docket Entry 3 at 10.) According to the Chain of Custody Rule in the Federal Rules of Evidence, "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." FED. R. EVID. 901; *United States v. Harris*, 211 F.3d 1266 (4th Cir. 2000). The issue is whether testimony authenticating the evidence is "'sufficiently complete so as to convince the court that it is improbable that the original item had been exchanged with another or otherwise tampered with.'" *Harris*, 211 F.3d at 1266 (quoting *United States v. Howard-Arias*, 679 F.2d 363, 366 (4th Cir.1982)). "[T]he fact of a missing link does not prevent the admission of real evidence, so long as there is sufficient proof that the evidence is what it purports to be and has not been altered in any material aspect." *Id.* (citations omitted).

Here, Detective Myers testified at trial that he received the pills directly from Detective

12

Lombard. (Docket Entry 9. Ex. 16 at 43.) The testimony does not depict precisely what happened. According to the record, Detective Lombard submitted a letter establishing the chain of custody of the pills used for the controlled buy. (Docket Entry 9, Ex. 11 at 8.) The letter indicates that, on the day of the controlled buy, Detective Lombard gave the pills to Lieutenant Moose at 9:30 a.m. who later gave the pills to Detective Myers at 11:30 a.m. (*Id.*) Nonetheless, this error in the chain of custody is harmless. Although Detective Myer's testified that he directly obtained the pills from Detective Lombard, it is improbable that the evidence was tampered with. Although it is disputed whether Detective Lombard gave the pills to either Detective Myers or Lieutenant Moose, no one disputes that the pills originally came from Detective Lombard. Thus, because the error in the chain of custody does not call into question whether the pills were tampered with, counsel's decision to not introduce Detective Lombard's letter did not fall below the standard of objective reasonable and did not subject Petitioner to undue prejudice.[2]

### Ground Two

Petitioner contends that while he was in jail, Detectives Owens and Earnhardt "participated in the execution of [a] search warrant on [his] car . . . [and that] their participation was not in discovery and they did not testify at trial." (Docket Entry 1, § 12, Ground Two.) Petitioner appears to contend that his Sixth Amendment right to confront the witnesses against him was violated because Detectives Owens and Earnhardt were not called to testify

---

[2] Petitioner also contends that his counsel's performance was ineffective because he "failed to challenge admissibility of [the] lab report." (Docket Entry 1, § 12, Ground One.) This assertion will be addressed below under Ground 4.

at trial. Petitioner contends that these officers conspired to plant evidence to frame him for drug trafficking because they could not pursue embezzlement and arson charges against him. (Docket Entry 3 at 2-4.)

The Confrontation Clause does not apply to Petitioner's claim. "The Sixth Amendment's Confrontation Clause provides that, in all criminal prosecutions, the accused shall enjoy the right to be confronted with the witnesses against him." *Crawford v. Washington*, 541 U.S. 36, 42 (2004) (quotations omitted). According to the Confrontation Clause Petitioner has the right to confront those that testify "against him, and, therefore, a witnesses' testimony is inadmissible unless the witness appears at trial." *United States v. Organes-Espino*, 476 F. App'x 543, 545 (4th Cir. 2012) (citations and quotations omitted). "Testimony . . . is typically a solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Crawford v. Washington*, 541 U.S. 36, 51 (2004) (citation and quotation omitted). Additionally, the Confrontation Clause applies to out-of-court statements offered at trial against the accused. *United States v. Kalbflesh*, 621 F. App'x 157, 159 (4th Cir. 2015).

Here, according to the record, neither Detective Owens nor Detective Earnhardt were called as witnesses to testify against Petitioner at trial. (*See* Docket Entry 9, Ex. 15 at 3; Docket Entry 9, Ex. 16 at 3.) Furthermore, no out-of-court statements of Detective Owens or Earnhardt were used to establish or prove any fact against Petitioner at trial. *See* (*Id.* at Ex. 14-15.) Therefore, the Confrontation Clause does not apply to Petitioner's contention that he was not able to confront witnesses against him.

Additionally, Petitioner contends that the State did not provide discovery showing that

14

Detectives Owens and Earnhardt participated in the search of Petitioner's vehicle. (Docket Entry 1§ 12, Ground 2.) In *Brady v. Maryland*, the Supreme Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. 83, 87 (1963). Subsequently, the Court held that the suppression by the prosecution of evidence favorable to an accused violates due process even when no request has been made by the defendant. *United States v. Agurs*, 427 U.S. 97, 107 (1976) *holding modified on other grounds by United States v. Bagley*, 473 U.S. 667 (1985). The Fourth Circuit has applied a three part test to determine whether the prosecution commits a *Brady* violation: "(1) the evidence must be favorable to the accused; (2) it must have been suppressed by the government either willfully or inadvertently; and (3) the suppression must have been material, *i.e.,* it must have prejudiced the defense at trial." *United States v. Griffin*, 391 F. App'x 311, 318 (4th Cir. 2010).

Here, evidence that Detectives Earnhardt and Owens were involved in the search of Petitioner's car is favorable to Petitioner because he alleged that the Detectives planted evidence in his car. (Docket Entry 3 at 4.) However, Petitioner does not contend that the prosecution suppressed this information willfully nor does he argue that the evidence was suppressed inadvertently. Moreover, the suppression of the detective's participation in the search is immaterial. "The materiality standard for *Brady* claims is met when the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Griffin*, 391 F. App'x at 318. There is sufficient

15

evidence to allow the jury to conclude that Petitioner agreed to purchase 10 to 20 hydrocodone pills from Ms. Griggs prior to his arrival at the grocery store parking lot, that he brought 14 pills during a controlled buy, and that, subsequently, the pills were found in his car. *Thomas*, 227 N.C. App. at 170-171, 174, 742 S.E.2d at 307-308, 310. Therefore, Petitioner's *Brady* claim fails because evidence that Detectives Owens and Earnhardt participated in the search of the vehicle would not "put the whole case in such a different light as to undermine confidence in the verdict." *Griffin*, 391 F. App'x at 318.

### Ground Three

Petitioner's third contention is that his Sixth Amendment and Fourteenth Amendment rights were violated. (Docket Entry 1, § 12, Ground Three.) Petitioner contends that "new evidence shows prosecution knowingly put key witness on the stand to give perjured testimony." (*Id.*) Specifically, Petitioner contends that Respondent allowed Ms. Griggs to falsely testify that she was victimized and traumatized by the controlled buy. Petitioner also alleges that Ms. Griggs created "a false back story explaining why law enforcement was after Petitioner." (Docket Entry 3 at 9.) Pursuant to the record, these claims lack merit. At trial Ms. Griggs testified about how she and Detective Myers set up the controlled buy. (Docket Entry 9, Ex. 14 at 18-20, 25-27.) Next, Ms. Griggs testified about how the controlled buy was executed. (*Id.* at 28-35.) During the course of direct examination Ms. Griggs indicated that she was nervous during the controlled buy. (*Id.* at 33.) On cross examination Ms. Griggs testified about almost having a nervous breakdown. (*Id.* at 44-45.) Nevertheless, Ms. Griggs testified that the decrease in her emotional stability resulted from

16

helping Petitioner against her better judgment which ultimately led to her having to testify at trial. (*Id.*) Although Ms. Griggs testified to being nervous during the controlled buy, she specifically testified that helping Petitioner obtain pills illegally and being "told on" by a lady Petitioner was sleeping with caused her to almost have a nervous breakdown. (Docket Entry 9, Ex. 15 at 28, 33, 44-45.) Therefore, because Ms. Grigg's did not testify that helping the Sheriff's Department catch Petitioner caused her be traumatized, nor did she create a false back story as to why law enforcement sought Petitioner, this particular claim is meritless.[3]

### Ground Four

Petitioner contends that he was convicted on unreliable lab test results. (Docket Entry 1, § 12, Ground Four.) Petitioner asserts that the wrong officer's name appeared on his lab report which caused "cross-contamination of report information." (Docket Entry 3 at 5-6.) It is well-settled in the Fourth Circuit that a claim challenging the admissibility of evidence under state law is rarely a claim upon which federal habeas corpus relief can be granted. *Spencer v. Murray*, 5 F.3d 758, 762 (4th Cir. 1993). "State court trial rulings respecting the admission and exclusion of evidence . . . are [only] cognizable in federal habeas corpus . . . to the extent that they violate specific constitutional provisions or are so egregious as to render the entire trial fundamentally unfair and thereby violate the due process clause of the Fourteenth Amendment." *Bruno v. Freeman*, 111 F.3d 129 (4th Cir. 1997) (table). Here,

---

[3] Petitioner's other arguments under Ground Three, including, his counsel's failure to proffer Ms. Griggs' police statement, counsel's failure to allow Detective Myer to give false testimony, and the State's failure to provide full discovery have all been address above.

Petitioner does not provide any meaningful evidence that the lab results from his case were mixed up with the results from another case. He simply alleges that this result is possible. As stated above, unsupported, conclusory allegations do not entitle a habeas petitioner to an evidentiary hearing. *Nickerson*, 971 F.2d at 1136. Moreover, Petitioner raised this point in his MAR. (Docket Entry 9, Ex. 9 at 7-8.) Petitioner's claim lacks merit and the MAR State Court did not err, much less act contrary to or unreasonably apply clearly established federal law in denying this claim.

Petitioner further alleges that new evidence revealed that the pills had expired five years before the controlled buy. (Docket Entry 3 at 6.) Petitioner also contends that "it is a well-known fact that prescription medications degrade over time losing potency and effectiveness." (*Id.* at 6.) However, the forensic chemist testified that one pill was tested and that it contained hydrocodone, a schedule III controlled substance. (Docket Entry 9, Ex. 15 at 12, 14, 16-17.) Thus, Petitioner's contention that the pills potency diminished enough to yield a negative test result is without merit. Furthermore, this claim was asserted in Petitioners MAR. (Docket Entry 9, Ex. 10 at 8-9.) Petitioner's claim lacks merit and the MAR State Court did not err, much less act contrary to or unreasonably apply clearly established federal law in denying this claim.

### Petitioner's Reply

As noted, Petitioner has filed a document entitled "Reply to State's Answer For Petitioner to Writ of Habeas Corpus." (Docket Entry 10.) In general, the claims asserted in this document do not advance any of Petitioner's claims. Petitioner also raised arguments

that have already been addressed. However, Petitioner does make several new allegations, and while these allegations do not entitle him to relief, these allegations require additional consideration.

First, Petitioner contends that the key evidence to convict him was found as a result of the collective efforts of four officers. (Docket Entry 10 at 1.) Therefore, according to Petitioner, the "evidence, given the circumstances, requires the testimony of the officers involved to establish its reliability." (*Id.* at 1.) However, "it is the trier of fact that weighs the evidence, determines credibility and draws inferences from historic to ultimate facts . . . ." *United States v. Collins*, 191 F.3d 449 (4th Cir. 1999) (table) (concluding that "the trier of fact, not the reviewing court . . . weighs the credibility of and resolves any conflicts in the evidence"); *see also Mallette v. Scully*, 752 F.2d 26, 31 (2d Cir. 1984). Therefore, the State is not required to put all four officers on the stand to establish the reliability of the evidence. It is the jury's obligation to determine whether the testimony of each Detective that takes the stand is sufficient to render the evidence reliable.

Next, Petitioner contends "that law enforcement may have had more than one set of pills at their disposal" which corroborates his entrapment argument. (Docket Entry 10 at 3.) Petitioner further contends that Ms. Griggs testified that she approached Petitioner to purchase Vicodin pain pills that had the letter "V" imprinted on them. (*Id.*) Petitioner contends that the pills found in his car did not have a V on them. (*Id.*) Petitioner is incorrect. A picture of the pills from the record indicates that the pills used in the controlled buy did have a V on them. (Docket Entry 9, Ex. 11 at 7.) Additionally, Ms. Griggs testified

19

that she believed the pills were Vicodin. (Docket Entry 9, Ex. 14 at 40.) Ms. Griggs was shown a photograph of the pills and indicated that she recognized them. (*Id.* at 31-32.) Therefore, Petitioner's argument that law enforcement may have had more than one set of pills is meritless.

Lastly, Petitioner contends that his arguments are supported by new evidence and therefore cannot be procedurally barred. (Docket Entry 10 at 34) Specifically, Petitioner contends that new evidence revealed that the pills used in the controlled buy were "5 years beyond their prescribed expiration date." (Docket Entry 3 at 6; Docket Entry 9, Ex.10 at 8.) Petitioner did not raise this argument on direct appeal but it was raised in his MAR. (Docket Entry 9, Ex. 10 at 8.) The MAR State Court specifically addressed the new argument in its order. The court reasoned that Petitioner "alleges new evidence . . . [s]pecifically, [Petitioner] argues that the crime lab reports are invalid, [and] that the crime lab results are inadmissible . . . ." (Docket Entry 1 at 16.) The MAR State Court ordered the State to file an answer pertaining "to the age/admissibility of the pills in his case." (*Id.*) Subsequently, the court reviewed the State's Answer and summarily denied Petitioner's MAR. (*Id.* at 17.) Petitioner must show that the MAR State "[C]ourt's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 102. As mentioned above, Petitioner merely speculates that his lab report was mixed with others. The MAR State Court did not err, much less act contrary to or unreasonably apply clearly established federal law in denying this claim. Thus, Petitioner's claim fails.

20

### Motion for the Appointment of Counsel

As noted, Petitioner has filed a motion for appointment of counsel. (Docket Entry 11.) In view of the undersigned's recommendation, no basis exists to appoint counsel, or to hold a hearing. Consequently, this motion is denied. *See Whisenant v. Yuam*, 739 F.2d 160, 165 (4th Cir. 1984), *abrogated in part on other grounds, Mallard v. United States Dist. Ct. for S.D. Iowa,* 490 U.S. 296 (1989).

### Conclusion

For the reasons set forth above, Petitioner is not entitled to relief. Moreover, a hearing is not warranted in this proceeding.

**IT IS THEREFORE ORDERED** that Petitioner's Motion for Appointment of Counsel (Docket Entry 11) be **DENIED** for the reasons described above.

**IT IS THEREFORE RECOMMENDED** that Respondent's Motion for Summary Judgment (Docket Entry 8) be **GRANTED**, that the Petition (Docket Entry 1) be **DISMISSED**, and that Judgment be entered dismissing this action.

Joe L. Webster
United States Magistrate Judge

March 2nd, 2016
Durham, North Carolina